RD 11 20 19

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 20 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------- X

DAMON MITCHELL,

        *Petitioner,*

   -against-

THOMAS GRIFFIN, Superintendent, Green
Haven Correctional Facility, and
ERIC T. SCHNEIDERMAN, New York
Attorney General,

        *Respondents.*

--------------------------------------- X

**MEMORANDUM & ORDER**

17-CV-5584(KAM)

**MATSUMOTO, United States District Judge:**

      On April 1, 2011, a jury of the Supreme Court of the
State of New York, Richmond County (the "trial court"), found
Damon Mitchell ("petitioner" or "Mitchell") guilty of two counts
of second-degree robbery. On May 4, 2011, the trial court
imposed on petitioner two consecutive 10-year prison terms for
the robbery convictions, each to be followed by a five-year term
of post-release supervision. Petitioner appealed his
convictions to the Supreme Court of the State of New York,
Appellate Division, Second Judicial Department (hereinafter,
"Appellate Division"). The Appellate Division affirmed
petitioner's convictions. Petitioner's appeal to the New York
Court of Appeals was subsequently denied. Petitioner then moved
to vacate his convictions pursuant to New York's Criminal
Procedure Law ("Crim. Proc. Law") § 440.10 (the "440 motion") in



the Supreme Court of the State of New York, Richmond County, which was denied on December 17, 2015. Petitioner afterward sought leave to appeal the denial of his 440 motion, but the Appellate Division denied such leave.

Mitchell now seeks relief from this court pursuant to 28 U.S.C. § 2254. In his petition, filed on September 25, 2017, petitioner challenges his state court convictions on the ground that he was deprived of the effective assistance of counsel both during trial and during a pre-trial suppression hearing. (ECF No. 1, Petition ("Pet."), filed 09/25/2017, at 5, 17.) For the reasons discussed below, the petition is DENIED in its entirety.

## BACKGROUND

### I. OFFENSE CONDUCT

Petitioner's convictions stem from two robberies that occurred fewer than two days apart in Staten Island. On June 17, 2010, at approximately 9:10 p.m., 65-year-old Alexander Zagorsky was preparing to close the Rainbow One Laundromat, when he was approached by a man asking to drop off clothing. (Pet. 13, 60.) That man thereafter retrieved a bag of laundry from his car and, when no other patron was present in the laundromat, followed Zagorsky to the back of the business. (*Id.*) There, the man suddenly struck Zagorsky on his face and body, demanding money. (*Id.*) The man ultimately fled the laundromat with $175 and a cell phone he was able to remove from Zagorsky's pockets.

The incident was captured on the business's security cameras. (*Id.*; ECF No. 5, Response to Petition ("Resp."), filed 12/08/2017, at 2.) Zagorsky called 911 at 9:55 p.m., and Robbery Squad Detective Gary Drucker responded to the scene. (Pet. 66-68.) Zagorsky reported to Detective Drucker that the robber was "a black man, approximately 35 years old, six feet tall, 190 pounds, [and] wearing a tan or beige fishing hat." (*Id.* at 13, 67.) No arrest was made that night. (Resp. 2.)

Roughly 33 hours later, at approximately 5:50 a.m. on June 19, 2010, 29-year-old Elayaraja Sanmugam was working at the Around the Clock Deli, when a man "wearing a hood, a mask, glasses, and gloves" entered the business, suddenly hit Sanmugam on the face with a hammer, and attempted to use said hammer to break open a cash register. (Resp. 9; Pet. 59-60.) Ultimately, the man could take only $20 he found under the register. (*Id.* at 10.) With the robber preoccupied attempting to access the register, Sanmugam seized the opportunity to run out of the deli, and he immediately alerted Christopher Rowell, a man working next door, of the incident. (Resp. 2.) Rowell then pursued the robber on foot, stopping to call 911 but never "[losing] sight" of the person he was chasing. (*Id.*) In his 911 call, Rowell provided the dispatcher a description of himself, including his clothing, so as to "avoid 'an altercation' when police arrived." (*Id.*) Both Sanmugam and

Rowell observed no other people on the street at that time.
(*Id.*)

On patrol in the vicinity that morning, Officer Scott
Zelinski responded to the 911 call. As he was canvassing the
area, he observed one black man pursuing another black man—
Rowell chasing petitioner. (Pet. 21, 25; Resp. 11.) Officer
Zelinski and his partner stopped the men, but because both were
wearing the type of clothing the 911 caller had described
himself as wearing, they opted to frisk and handcuff both
petitioner and Rowell. (Pet. 21.) On a separate patrol of the
area that morning, Officer Omar Birchwood responded to a call
from Officer Zelinski for back-up. (*Id.*)

In the presence of petitioner and the officers, Rowell
told the police about the robbery that had just happened and
asked them to have Sanmugam, who was still at the deli, to
verify that petitioner was the perpetrator. (Resp. 12.) For
his part, petitioner claimed to the officers that he knew
nothing about the deli robbery; he said he had been returning
home from a store that morning and was unexpectedly pursued by
Rowell, who "came out of nowhere" and appeared to be carrying a
firearm. (Pet. 26.) Petitioner and the officers subsequently
looked for a discarded firearm but could not locate one. (*Id.*)

At approximately 6:15 a.m., the police arrived at the
deli and asked Sanmugam about the robbery. (Resp. 12.) They

then transported Sanmugam to where Officer Zelinski had stopped Rowell and petitioner. (*Id.*; Pet. 25.) After Sanmugam identified Rowell as his friend, the officers uncuffed him. (*Id.*) Based on this identification, the officers arrested petitioner on four charges: robbery in the first degree, assault, criminal possession of stolen property, and menacing. (Pet. 71.)

Three days later, on June 22, 2010, Detective Drucker arranged for Zagorsky to attempt to identify the perpetrator of the July 17 robbery by way of a photo array, during which Zagorsky positively identified petitioner. (ECF No. 1-2, Petitioner's Memorandum of Law ("Pet. Mem."), filed 09/25/2017, at 9.) Three days later, on June 25, 2010, Detective Drucker arranged for a second time for Zagorsky to identify the perpetrator of the June 17 laundromat robbery, this time through a corporeal line-up. (ECF No. 5, Affirmation in Opposition to the Petition for a Writ of Habeas Corpus, at 13.) Zagorsky again made a positive identification of petitioner. (Pet. 25; Resp. 13.) Petitioner was thereafter charged with the June 17 robbery.

## II.  JURY TRIAL, VERDICT, AND SENTENCING

Petitioner faced several charges at trial. For the June 17 robbery, petitioner was charged with robbery in the second degree, robbery in the third degree, assault in the

second degree, and assault in the third degree. For the June 19 robbery, petitioner was charged with robbery in the first degree, robbery in the second degree, robbery in the third degree, criminal possession of a weapon in the third degree, and criminal possession of a weapon in the fourth degree. (Pet. 79.)

On September 28, 2010, petitioner's counsel moved in the Richmond County Supreme Court for dismissal of the indictment and suppression of certain evidence. (*Id.*) Petitioner's motions for *Wade*, *Mapp*, and *Dunaway* hearings were granted; his motion to dismiss the indictment was denied; and after pretrial suppression hearings on October 25, 2010, and November 18, 2010, petitioner's suppression motion was denied.[1] (Pet. 10, 79-80.) The court determined that the officers had reasonable suspicion to detain petitioner on the morning of June 19 and that none of petitioner's statements to police before his arrest were the product of custodial police interrogation in violation of *Miranda* and, therefore, none was subject to suppression. (Resp. 7.)

On March 23, 2011, petitioner's jury trial commenced. (Pet. 80.) At trial, petitioner's counsel stressed that Sanmugam had not positively identified petitioner as the man who

---

[1]    The trial court concurrently held a *Huntley* hearing, affording petitioner the chance to challenge whether a statement he made was involuntary. *See* 32A N.Y. Jur. Crim. Proc. Law § 1665.

had attacked him with a hammer, which the government disclosed mid-trial, and noted that police had failed to recover the hammer that was allegedly used in the robbery. (*Id.* at 27, 29.) Petitioner's trial counsel additionally sought to undermine Zagorsky's testimony, while faulting the evidence collection officer for failing to sufficiently examine the laundromat. (*Id.*) Petitioner denied having been at either the laundromat or the deli, and having already rejected multiple plea offers, he continued to maintain his innocence. (Resp. 14; Pet. 29.)

After deliberations, the jury returned a mixed verdict: petitioner was acquitted of the first-degree robbery count, for the June 19 deli robbery, and convicted of two second-degree robbery counts for the laundromat and deli robberies. (Pet. 80.) The trial prosecutor requested the court impose consecutive 10-year prison terms, each of which to be followed by five years of post-release supervision. On May 4, 2011, the court sentenced petitioner consistent with the government's request. (ECF No. 5-8, Brief for Defendant-Appellant ("Def.-App. Br."), filed 12/08/2017, at 9-10.)

## III. POST-CONVICTION PROCEEDINGS

### A. Petitioner's Direct Appeal

On October 30, 2013, petitioner perfected a direct appeal of the jury verdict, arguing, *inter alia*, that his trial counsel was ineffective for failing to "adequately review

discovery materials," to "argue at the suppression hearing that police lacked reasonable suspicion to stop and detain him," to move to re-open the suppression hearing, and to recall Officer Birchwood, who had earlier testified that Sanmugan had made a positive identification of petitioner as the hammer-wielding robber. (Pet. 30.)

On September 10, 2014, the Appellate Division affirmed the convictions and rejected petitioner's claim of ineffective assistance of counsel. (Pet. 30, 80.) The court additionally rejected petitioner's claim of a *Brady* violation, holding that it was "unpreserved and, in any event, without merit." *People v. Mitchell*, 120 A.D.3d 1265 (2d Dep't 2014); (Pet. 76.) After reviewing the record, the appellate court finally concluded that "the verdict of guilt was not against the weight of the evidence."[2] (*Id.*)

On December 8, 2014, the Court of Appeals denied petitioner's application for leave to appeal. *People v. Mitchell*, N.Y.3d 1086 (2014); (Pet. 78.)

### B. Petitioner's § 440.10 Motion

On July 22, 2015, petitioner, proceeding *pro se*, moved to vacate the judgment of the Richmond County Supreme Court, arguing—as he did on direct appeal—that his trial counsel was

---

[2]     Petitioner has not renewed his *Brady* claim on federal habeas review.

8

ineffective for failing to move to re-open the suppression
hearing in light of the inconsistent testimony between Sanmugam
and Officer Birchwood. (Pet. 30.) Additionally, petitioner
claimed that the prosecution "had knowingly presented false
testimony to the Grand Jury." (*Id.*) In opposition to
petitioner's motion, the prosecution argued that petitioner was
procedurally barred under C.P.L. § 440.10(2)(a) and (c);
alternatively, the prosecution argued that petitioner's motion
should be summarily denied for its lack of both legal and
factual bases, pursuant to C.P.L. § 440.30(4)(a), (b), and (d).
(Resp. 16.)

On December 17, 2015, Justice Ozzi of the Richmond
County Supreme Court denied petitioner's § 440.10 motion. (Pet.
79-82.) In the decision and order, the court concluded that
petitioner's motion was procedurally barred under C.P.L. §
440.10(2)(a) and (c) because petitioner's claims could have been
asserted or had already been asserted on direct appeal. (*Id.* at
81.) In addition to this procedural bar, the court went on to
reject petitioner's claim—including his ineffective-assistance
claim—on the merits. (*Id.* at 81-82.) Specifically, the court,
citing New York law, concluded that Mitchell's arguments
regarding his trial counsel's performance reflected "[a] 'simple
disagreement with strategies, tactics, or the scope of possible
cross-examination, weighed long after the trial.'" (*Id.* at 24.)

As to the sentence imposed by the trial court, Justice Ozzi found Mitchell's trial counsel was effective, and noted that petitioner ultimately "was acquitted of the top count of the indictment," *i.e.,* the first-degree robbery charge. (*Id.*) The court added that petitioner's other argument, which centered on the trial prosecutor's conduct during grand jury proceedings, amounted to "speculation, without evidentiary support, that the prosecution relied on hearsay evidence." (*Id.* at 23-24.)

Petitioner subsequently applied for leave to appeal the denial of his 440 motion, but on April 28, 2017, the Appellate Division denied his application. (*Id.* at 83.)

C.   **Petitioner's Federal Habeas Petition**

On September 25, 2017, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking to vacate his state convictions. In his petition, Mitchell argues that his defense counsel was ineffective at both the suppression hearing and at trial. (Pet. 6-7.)

**LEGAL STANDARD**

A petition for a writ of habeas corpus filed by a person in state custody is governed, *inter alia*, by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254. Section 2254 specifies that a district court may issue a writ of habeas corpus for an individual petitioner in state custody "only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In addition, AEDPA provides that a one-year statute of limitations applies to "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1); *see generally* 28 U.S.C. § 2244(d).

## I.  STATE COURT APPLICATION OF FEDERAL LAW

A federal court may grant a writ of habeas corpus only when "the applicant has exhausted the remedies available in the courts of the State," when "there is an absence of available State corrective process," or when "circumstances exist that render [such State corrective] process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).

A federal court is prohibited from granting a petition for a writ of habeas corpus for a claim adjudicated by the state court on the merits, unless such adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). AEDPA thereby "bars relitigation of any claim 'adjudicated on the merits' in state court." *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see also Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) ("[H]abeas relief may be granted only if the state court's adjudication 'resulted in a decision that was

contrary to, or involved an unreasonable application of,'
Supreme Court precedent that was 'clearly established' at the
time of the adjudication."). In applying this "highly
deferential standard for evaluating state-court rulings, . . .
state-court decisions [must] be given the benefit of the doubt."
*Brumfield v. Cain*, 135 S. Ct. 2269, 2289 (2015) (quoting *Cullen
v. Pinholster*, 563 U.S. 170 (2011)).

In deciding whether to apply the above deferential
standard, the federal court must preliminarily determine whether
the state court adjudicated the relevant claim on the merits.
"A state court adjudicates a petitioner's federal claims on the
merits when it (1) disposes of the claim on the merits, and (2)
reduces its disposition to judgment." *Howard v. Walker*, 406
F.3d 114, 122 (2d Cir. 2005) (citing *Norde v. Keane*, 294 F.3d
401, 410 (2d Cir. 2002) (internal quotation marks omitted)). A
claim adjudicated on the merits need not have been exhaustively
addressed in state court. *See, e.g.*, *Ryan v. Miller*, 303 F.3d
231, 245-46 (2d Cir. 2002) (concluding that a state court had
adjudicated a case on the merits by way of a blanket statement,
"the defendant's remaining contentions are either unpreserved
for appellate review or without merit"); *see also Reznikov v.
David*, Nos. 05-CV-1006 (RRM), 05-CV-1008 (RRM), 2009 WL 424742,
at *3 (E.D.N.Y. Feb. 20, 2009) ("Under AEDPA, a proper merits
adjudication requires only that (a) a federal claim be raised,

and (b) that it be disposed of on substantive, rather than procedural grounds."). "When a state court [adjudicates a federal claim on the merits], a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). *See also Gutierrez v. Capra*, No. 14-CV-6887 (KAM), 2019 WL 1508454, at *6 (E.D.N.Y. Apr. 5, 2019). Indeed, a federal court "cannot grant habeas relief where a petitioner's claim pursuant to applicable federal law, or the U.S. Constitution, has been adjudicated on its merits in state court proceedings in a manner that is not manifestly contrary to common sense." *Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) (quoting *Anderson v. Miller*, 346 F.3d 315, 324 (2d Cir. 2003)).

Once the habeas court determines that the state court adjudicated a petitioner's federal claims on the merits, it must then determine if the state court unreasonably applied federal law. To this end, the federal court considers that, for § 2254 purposes, "[c]learly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" *Howard*, 406 F.3d at 122 (quoting *Kannaugh v. Miller*, 289 F.3d

36, 42 (2d Cir. 2002)). A state court's decision is contrary to federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J., concurring and writing for the majority in this part). An unreasonable application of law occurs when "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Unreasonableness is measured objectively and "requires a 'higher threshold' than 'incorrect.'" *Boyd v. Saunders*, No. 16-CV-4885 (KAM), 2018 WL 5313763, at *4 (E.D.N.Y. Oct. 26, 2018) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "'[T]he most important point is that an unreasonable application of federal law is different from an incorrect application.'" *Howard*, 406 F.3d at 122 (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)). The state court's application of federal law must have "[s]ome increment of incorrectness beyond error . . . . [H]owever, . . . the increment need not be great[.]" *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). If a district court determines that a state court unreasonably applied established federal law, thereby "resulting in constitutional error, [the

14

district court] must next consider whether such error was harmless." *Howard*, 406 F.3d at 122 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993)).

Separate from a state court's unreasonable or contrary application of federal law, a district court may grant a writ of habeas corpus when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's factual determinations are presumed correct, however, and the petitioner has the burden of "rebutting the presumption of correctness by clear and convincing evidence." *Id.* at § 2254(e)(1). Accordingly, a district court "may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fair[-]minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (citations and internal quotation marks omitted).

## II. Exhaustion Requirement

Pursuant to § 2254, a district court may not grant a habeas petition made by "a person in custody pursuant to the judgment of a State court" unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). This rule is "grounded in . . . concerns for

federalism and comity between the state and federal sovereigns . . . [and] ensures that federal courts respect the 'States' interest in correcting their own mistakes.'" *Aparicio v. Artuz,* 269 F.3d 78, 90 (2d Cir. 2001) (citation omitted) (quoting *Coleman v. Thompson,* 501 U.S. 722, 732 (1991)). To satisfy the exhaustion requirement, a petitioner must have "(i) presented the federal constitutional claim asserted in the [habeas] petition to the highest state court (after preserving it as required by state law in the lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen. of N.Y.,* 280 F.3d 87, 94 (2d Cir. 2001) (citing, *inter alia*, *Picard v. Connor,* 404 U.S. 270, 276-77 (1971)); *see also Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir. 1994) ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'" (quoting *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir. 1990)).

"Even if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it is, as a result, then procedurally barred under state law." *Ramirez,* 280 F.3d at 94. Where a claim is exhausted but procedurally barred, a court may nonetheless review it if the petitioner shows "cause for the

default and prejudice, or demonstrate[s] that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio*, 269 F.3d at 90 (citing *Coleman*, 501 U.S. at 748–50). If a state court ruling contains a plain statement that a claim is procedurally barred, then the federal court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (explaining that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" when it explicitly invokes a state procedural ground as a separate basis for its decision (emphasis in original)).

## DISCUSSION

### I.  Exhaustion

In the instant case, petitioner has exhausted his remedies in state court, having appealed his conviction to the State's Appellate Division and having sought leave to appeal his affirmed convictions to the Court of Appeals, the State's highest court. Petitioner also sought post-conviction relief from the State's courts, pursuant to Crim. Proc. Law § 440.10 in a motion to vacate his conviction.

Before this federal court, petitioner argues that the last reasoned opinion the court should review under AEDPA is that of the Richmond County Supreme Court, which denied

petitioner's 440 motion. (Pet. Mem. 27.) Respondent, however,
argues that the court should defer to the Appellate Division's
decision on petitioner's direct appeal, as petitioner's claims
of ineffective assistance of counsel presented here are
"identical to those previously raised and rejected in the
Appellate Division," thereby rendering petitioner's claims
procedurally barred under § 440.10(2)(a). (ECF No. 5-1,
Memorandum in Opposition ("Opp. Mem."), filed 12/08/2017, at 3.)

Though Justice Ozzi, in his decision on petitioner's
440 motion, cited procedural bars as a basis for denying
petitioner's post-conviction motion, (Pet. 23), the Justice
clearly went on to reject petitioner's claims on the merits.
"When, as here, there is 'ambiguity' in a state court opinion
that 'prevent[s] [this court] from definitively concluding that'
the state court relied on a state procedural bar—such as when
the 'opinion states that a group of contentions is either
without merit 'or' procedurally barred'—[this court will]
presume that the state court resolved the decision on the merits
and that we are not precluded from reviewing the claim's
merits." *Garner v. Lee*, 908 F.3d 845, 859 (2d Cir. 2018)
(quoting *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003));
*see also Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)
(stating that although "a state court may rest its judgment on a
state procedural bar if it rejects the merits of a claim *only in*

18

*the alternative*, the [United States] Supreme Court has admonished that, when in doubt, courts should presume that the state court adjudicated the claim on the merits").

In the Richmond County Supreme Court's decision on petitioner's post-conviction application, the court barred petitioner's claims on two specific procedural grounds: § 440.10(2)(a) and (c), which, respectively, concern the exhaustion of a claim on direct appeal from original judgment and failure to raise a claim on direct appeal. First, a denial under § 440.10(2)(a) is not an independent and adequate state ground that precludes federal habeas review. *Silverstein v. Henderson*, 706 F.2d 361, 368 (2d Cir. 1983). Further, a denial under § 440.10(2)(c) will be honored only when such procedural rule is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). "Whether application of the procedural rule is firmly established and regularly followed must be judged in the context of the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." *Louis v. Fischer*, No. 04-CV-2887 (KAM), 2007 WL 4198255, at *20 (E.D.N.Y. June 25, 2007) (internal quotation marks omitted) (citing *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003)). Here, petitioner

in fact raised the same ineffective-assistance claims in his direct appeal. (*See* Def.-App. Br. 66-85.) Thus, § 440.10(2)(c) was an incorrect procedural basis for denying petitioner's claim.

As petitioner points out, however, the Richmond County Supreme Court additionally rejected petitioner's claim as "wholly self-serving and *without merit*." (Pet. 23 (emphasis added).) Since Justice Ozzi's decision included both procedural and merits-based rationale, there is sufficient "ambiguity," *Miranda*, 322 F.3d at 178, to permit this court to treat the decision as one on the merits and, accordingly, to afford it deference.

The court therefore reviews Justice Ozzi's reasoned decision under AEDPA's deferential standard and shall only grant the petition if his decision constitutes an unreasonable application of federal law or is based on an unreasonable determination of the facts. For the reasons set forth below, the petition is DENIED.

## II. Ineffective Assistance of Counsel

The crux of petitioner's habeas petition centers allegations of his trial counsel's deficient performance.

### A. Legal Standard

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court "clearly established" that the Sixth Amendment to

the United States Constitution guarantees effective assistance of counsel. *Williams*, 529 U.S. at 390-91. A defendant claiming ineffective assistance must establish both prongs of the test *Strickland* prescribes: "deficient performance by counsel and prejudice." *Premo v. Moore*, 562 U.S. 115, 122 (2011) (citation omitted). That said, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Harrington*, 562 U.S. at 105.

To satisfy the first prong—deficient performance—a defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. A court reviewing an attorney's performance must be "highly deferential," making "every effort . . . to eliminate the distorting effects of hindsight" and evaluating "the conduct from counsel's perspective at the time." *Id.* at 689. Consequently, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.; see also Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009).

To satisfy the second prong—prejudice—a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Strickland*, 466 U.S. at 694. Merely alleging that errors "had some conceivable effect on the outcome of the proceeding" is insufficient. *Id.* at 693. Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687). "In assessing prejudice stemming from the failure to investigate and introduce certain evidence, a court must consider '*all* the relevant evidence that the jury would have had before it,' had the evidence been introduced, including unfavorable evidence." *Barnes v. Burge*, 372 F. Appx. 196, 199 (2d Cir. 2011) (emphasis in original) (quoting *Wong v. Belmontes*, 558 U.S. 15, 20 (2009) (per curiam)).

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly'" deferential. *Harrington*, 562 U.S. at 105 (quoting *Knowles*, 556 U.S. at 123). As the Supreme Court reasoned in *Harrington*:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* Because, as noted above, this court will treat the Richmond County Supreme Court's post-conviction decision as a decision on the merits, the above-described "doubly" deferential standard of review applies.

### B. Analysis

Per the Supreme Court's instructions, when reviewing an ineffective assistance of counsel claim, the federal habeas court must be guided by one question: "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

In his denial of petitioner's 440 motion, Justice Ozzi determined that Mitchell had failed to "demonstrate that he was deprived of a fair trial by receiving less than meaningful representation." (ECF No. 5-17, 440 Decision ("440 Dec."), filed 12/08/2017, at 5.) Considering petitioner's arguments, Justice Ozzi concluded that Mitchell's "assertions that his attorney failed to make various arguments at hearings and trial or pursue a mistaken identity defense all reflect strategic decisions or tactics that do not amount to ineffective assistance of counsel." (*Id.*)

This court agrees. Because there are reasonable arguments that trial counsel satisfied the *Strickland* standard for each of the claims raised by petitioner, the court cannot

say that Justice Ozzi unreasonably applied *Strickland* in his denial of petitioner's 440 motion.

### 1.   *Failure to Review Discovery Materials*

Petitioner first argues that his trial counsel performed deficiently with respect to pre-trial preparation. The "record demonstrate[s] that counsel failed to adequately review relevant discovery materials," (Pet. Mem. 41.), petitioner asserts, adding that his attorney's conduct "was defined by [a] lack of preparation and focus" that served to "undermine[] the defense and advance[] the prosecution." (*Id.*)

To be sure, as petitioner argued in his direct appeal (*see* Def.-App. Br. 76), a defendant's trial counsel is obligated to conduct a "thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690-91. But in advancing this claim, petitioner asserts two arguments that New York state courts have already dispensed with as meritless: first, that his trial counsel should have been aware of his pre-arrest statement in order to challenge admission into evidence of said statement; and second, that his trial counsel generally failed to review pre-trial discovery.

Other than conclusory statements, petitioner does not present record evidence illustrating such alleged deficiencies. In fact, the only portions of the state court record petitioner references in advancing this first claim involve the pre-trial

suppression hearing, which is discussed below. Petitioner

offers nothing else in support of this argument. Because

petitioner's ineffective-assistance claim predicated on his

trial counsel's failure to review discovery materials is in

essence an unsubstantiated assertion, petitioner's claim is

denied.

### 2. *Failure to Suppress Petitioner's Pre-Arrest Statement and Challenge the Grounds for Petitioner's Arrest*

Petitioner next asserts that his trial counsel

deficiently performed at the pre-trial suppression hearing.

Specifically, petitioner faults counsel for being "unaware,"

(Pet. Mem. 42.), of petitioner's pre-arrest statement; for

"conduct[ing] the entire hearing . . . without once challenging

Officer Zelinski's testimony," (*id.*); for failing to home in on

the "glaring discrepancy," (*id.*), between the testimony of

Officers Zelinski and Birchwood; and for not advancing the

argument that police lacked reasonable suspicion to stop and

detain petitioner, (*id.* at 43).

Under *Strickland*'s first prong, "strategic decisions

regarding the challenging of evidence and witnesses cannot be

second-guessed in an effort to support an ineffective assistance

of counsel claim." *Mejia v. United States*, 862 F. Supp. 2d 263,

277 (E.D.N.Y. 2012). Trial counsel's "decision whether or not

to file a suppression motion is one such tactical decision that

courts generally will not disturb." *United States v. Wilson*, 146 F. Supp. 3d 472, 478 (E.D.N.Y. 2015); *see also United States v. Jacobs*, 270 F. Supp. 2d 293, 298 (D. Conn. 2003) (describing decision not to argue for suppression as a "sound tactical decision").

Here, the record demonstrates effective performance by petitioner's trial counsel during the suppression hearing. For one, counsel acknowledged receipt of all relevant evidence at the hearing, (*see* ECF No. 5-2, Suppression Hearing Transcript I ("Supp. Tr. I"), filed 12/08/2017, at 11), and, once the government broached the subject of petitioner's pre-arrest statement, counsel immediately moved for a *Huntley* hearing, which the court granted, (*see id.* at 9). Counsel also made sure to ascertain whether petitioner had been given *Miranda* warnings prior to his arrest. (*Id.* at 35.) Further, the suppression hearing transcript reveals the extent to which trial counsel vigorously cross-examined Officer Zelinski, questioning him at length about the description he had received of the perpetrator of the robbery prior to arresting petitioner. (*Id.* at 30.) Additionally, petitioner's counsel in fact did question Officer Birchwood about the substance of Rowell's 911 call, in which Rowell provided the dispatcher with a description of himself, not of the robbery's perpetrator. (*Id.* at 54.) Finally, the testimony that petitioner's counsel himself elicited served to

explain why the officers stopped and questioned both petitioner and Rowell—*i.e.*, the two men were both wearing white shirts, and so officers were uncertain which of the two was the 911 caller. (*Id.* at 32.)  In the end, the basis for petitioner's arrest was the identification by Sanmugan, the victim of the robbery, of Rowell—not an affirmative identification of petitioner himself. (Supp. Tr. I 74.)

Relatedly, petitioner faults counsel for failing to convince the suppression court that there was insufficient probable cause for his arrest or reasonable suspicion for the police to have stopped him in the first place. (*See* Pet. Mem. 1-2, 38-39.)  In advancing this argument, petitioner asserts that "[b]ecause counsel's obvious strategy in seeking and conducting a suppression hearing was to win suppression of all fruits of illegal police conduct, [counsel's] failure to make meritorious arguments to effect his strategy was indefensible, not objectively reasonable."  (Pet. Mem. 39.)  But petitioner's argument actually justifies why it was not objectively unreasonable for trial counsel to have focused on one or more issues instead of others.  During the two-day suppression hearing, trial counsel had a slew of contested matters to cover, ranging from the adequacy of the victims' identification of petitioner, (ECF No. 5-3, Suppression Hearing Transcript II ("Supp. Tr. II"), filed 12/08/2017, at 43-44), to the

voluntariness of petitioner's pre-arrest statement, (*id.* at 47).
Put differently, trial counsel reasonably could have concluded
that it was more fruitful for his client's case to pursue
certain arguments over others during this proceeding. *See*
*Rahman v. Graham*, No. 16CV5318LAPRWL, 2018 WL 9339953, at *16
(S.D.N.Y. Sept. 14, 2018), *report and recommendation*
*adopted*, No. 16-CV-5318 (LAP), 2019 WL 3802523 (S.D.N.Y. Aug.
13, 2019) (petitioner was not deprived effective assistance of
counsel by attorney's "strategic decision . . . to prioritize
stronger claims over weaker ones.").

Further, even assuming that counsel's performance was
deficient for the reasons petitioner alleges, the court is still
unable to conclude that the outcome of the suppression hearing
would have been different. The record evidence demonstrates
why. For one, the police officers testified that they stopped
"two individuals who matched the description given to them from
a [911] call," and that "[t]hey did not know which person" of
the two was the "good Samaritan" who had made the 911 call.
(*Id.*) It was, therefore, clear to the suppression court that
police had an adequate basis for stopping both Rowell and
petitioner, (*id.* at 52-53), and that Sanmugan's subsequent
identification of Rowell as his "friend" provided ample cause to
arrest petitioner as the perpetrator of the robbery, (Supp. Tr.
I 74.).

There is ultimately no basis for the court to conclude that any deficiency in trial counsel's performance at the suppression hearing compromised the verdict the jury reached after petitioner's trial. Additional examples from the record demonstrate why petitioner's argument is not persuasive. For example, Rowell's 911 call was ultimately not suppressed because the trial judge correctly ruled it was an excited utterance and did not present any *Crawford* issues. (Supp. Tr. 4.) Moreover, petitioner's pre-arrest statement did not feature in the trial prosecutor's case, rendering the inability of petitioner's counsel to suppress it inconsequential.

Thus, even if petitioner's counsel was ineffective in deciding to pursue certain specific tactics during the suppression hearing, the court cannot say that counsel's assistance at this preliminary proceeding affected the outcome of petitioner's trial. As discussed below, Sanmugan's identification of Rowell at trial provided the jury a basis for concluding that petitioner was the robber. (*See* ECF No. 5-6, Jury Trial Transcript II ("Jury Tr. II"), filed 12/08/2017, at 160.)

In light of the above, the Richmond County Supreme Court's decision denying petitioner's ineffective-assistance claim regarding the suppression hearing was neither "contrary to," nor did it involve "an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court."
28 U.S.C. § 2254(d)(1). The suppression-based ineffective
assistance of counsel claim is therefore denied.

### 3. *Failure to Pursue a Misidentification Defense at Trial*

Petitioner's third claim of ineffective assistance
centers on his counsel's performance during the jury trial. In
particular, petitioner faults trial counsel for inadequately
pursuing what petitioner concedes was the appropriate defense: a
misidentification defense. In support of this claim, petitioner
argues two main points: first, that counsel failed "to argue
that the height disparity" between the two victims' descriptions
of the robber "made it unlikely that the same man committed both
robberies," (Pet. Mem. 46); and second, that counsel failed to
move for a new suppression hearing, (*id.* at 49).

Contrary to petitioner's contentions, the record,
instead, underscores counsel's vigorous pursuit of a
misidentification defense. Counsel cross-examined Zagorsky at
length about the description he provided Officer Drucker,
focusing the jury's attention on the fact that the victim had to
wear eyeglasses daily. (ECF No. 5-5, Jury Trial Transcript I,
filed 12/08/2017, at 60.) Counsel thereafter built on the
testimony he elicited by way of his extensive cross-examination
of Officer Drucker regarding Zagorsky's description. (*Id.* at
138.) Further, petitioner's trial counsel prompted the second

victim, Sanmugan, to concede that he "couldn't see [the robber's] face." (Jury Tr. II 163.) Thus, the record does not support petitioner's claim that his counsel unreasonably neglected to point out discrepancies between the victims' statements in advancing a misidentification defense. In other words, counsel clearly pursued a misidentification strategy, and the court cannot say that it was unreasonable for counsel not to have specifically argued the height differential in the victims' respective descriptions of the robber.

With regard to moving for a new suppression hearing, petitioner first and foremost fails to satisfy the prejudice prong of *Strickland*'s test. Mitchell does not explain how such a motion, if offered by his trial counsel mid-trial, would have resulted in the jury rendering a different verdict. Rather, petitioner argues in conclusory fashion that the disclosure by the prosecutor that Sanmugan was not an identifying witness, (Pet. Mem. 17), should have prompted his trial counsel to dispute the outcome of the suppression hearing, during which officers mistakenly testified that "Sanmugan had identified Mitchell as the robber," (*id.* at 24-25), and which resulted in the court's refusal to suppress Mitchell's statement to the police and to conclude that officers had probable cause to stop Mitchell, (*id.* at 11). Petitioner, however, neglects to acknowledge that the trial court properly instructed the jury on

how to evaluate petitioner's pre-arrest statement to police.
(Jur. Tr. II 261.)  Second, petitioner's counsel argued at
length about the reliability of testimony provided by Zagorsky,
Sanmugan, and Rowell.  (*Id.* at 219-35.)  As stated above, the
jury was tasked with deciding whether Sanmugan's identification
of Rowell as his friend was sufficient to implicate petitioner
by process of elimination.  In spite of petitioner's counsel's
efforts—including repeatedly asking why the hammer used in the
robbery had never been found, (*id.* at 224-25), and reminding
jurors that Sanmugan had never identified petitioner directly
(*id.* at 223)—the jury concluded that the evidence, taken
together, proved beyond a reasonable doubt that petitioner was
the perpetrator of the robbery.  Accordingly, the court cannot
conclude that Mitchell's retrospective disagreement with his
trial counsel's decision not to move to reopen the suppression
hearing provides sufficient reason to lack "confidence in the
outcome" of the trial.  *Strickland*, 466 U.S. at 694.  In any
event, as Justice Ozzi correctly noted, petitioner's *Brady* claim
was rejected as unpreserved on direct appeal.  (440 Dec. 3; *see
also People v. Mitchell*, 120 A.D.3d 1265 (2d Dep't 2014).)
Petitioner therefore cannot now rely on the habeas court to
revive this claim.

Another facet of trial counsel's purported
ineffectiveness in pursuing a misidentification defense,

petitioner argues, was the failure to highlight Zagorsky's initial description of the robber to Detective Drucker. (Pet. Mem. 40.) This description portrayed a robber who "reportedly was four inches taller, ten years younger and a different weight than [petitioner]." (*Id.* at 14.) Granted, Zagorsky's initial description was hardly an exact match with petitioner's height, weight, and age. But Zagorsky positively identified Mitchell twice—once in a photo array, and another time via a corporeal line-up. (*Id.*) The jury thus had a reasonable basis to conclude that the inaccurate description that a "'nervous, shaken up,'" (*id.* at 19), Zagorsky provided on the night of the robbery did not undermine his positive identifications later in time.

Finally, petitioner faults his trial counsel for not arguing that the prosecution had failed to prove one element of the June 17 robbery charge: proof of physical injury. (*Id.* at 42.) This argument is wholly unrelated to a misidentification defense, which petitioner admits was an appropriate defense, and which his trial counsel in fact pursued. As such, petitioner's claim here is little more than the retrospective second-guessing of trial counsel's strategy that *Strickland* prohibits. And even if it were not, the court cannot conclude that the testimony of Zagorsky, coupled with the surveillance footage showing the robber strike the elderly laundromat attendant with such force

that the man fell, (*id.*), was insufficient evidence for the jury to have found proof of physical injury.

In light of the above, petitioner has failed to demonstrate that the Richmond County Supreme Court's adjudication of his post-conviction motion was an unreasonable application of federal law. His third ineffective-assistance claim is therefore denied.

### 4. *Cumulative Effect of All Ineffective-Assistance Claims*

Petitioner's final claim is that the cumulative effect of all of trial counsel's alleged errors denied him the right to effective assistance of counsel. Again, even if the actions of petitioner's counsel resulted from error rather than strategy or reasons beyond his control, counsel's performance must still be accorded a degree of deference. This is because the Sixth Amendment does not guarantee "error-free, perfect representation," *Morris v. Garvin*, No. 98-CV-4661 (JG), 2000 WL 1692845, at *3 (E.D.N.Y. Oct. 10, 2000), but merely a "wide range of professionally competent assistance," *Strickland*, 466 U.S. at 689. Since this court has determined that none of petitioner's individual ineffective-assistance claims are meritorious, the Richmond County Supreme Court's rejection of petitioner's ineffective-assistance claims, individually and cumulatively, was not an unreasonable application of federal law. *See Wise v. Smith*, 735 F.2d 735, 739 (2d Cir. 1984)

(defendant "was not entitled to a perfect defense, and the cumulative effect of the errors and omissions that we might find do not amount to a denial of effective assistance of counsel"). The court cannot say that counsel's performance fell below *Strickland*'s deferential standard or that the trial outcome was unreliable. Thus, petitioner's final ineffective-assistance claim is denied.

### 5. *Prejudice*

In its post-conviction decision, the Richmond County Supreme Court did not adjudicate prejudice. This was not error, as *Strickland*'s two-prong test requires both prongs be met for an ineffective-assistance claim. Stated differently, Justice Ozzi did not need to reach the question of prejudice after rejecting petitioner's ineffective-assistance claims on the ground of trial counsel's performance.

It is ultimately unnecessary for this court to address *Strickland*'s second prong because petitioner has failed to meet the first. *See Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (finding ineffective assistance of counsel claim "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong" of the *Strickland* test). That fact notwithstanding, as noted above, this court concludes that, other than making conclusory statements, petitioner has failed to demonstrate that the outcome of his

jury trial would have been different but for the conduct of trial counsel.

## III. Unreasonable Determination of Facts

Petitioner additionally contends that the Richmond County Supreme Court's adjudication of his post-conviction motion involved an unreasonable determination of facts. Specifically, petitioner cites the Supreme Court's "determination that counsel's challenged conduct reflected strategic decisions" as grounds for reversing the court's judgment. (Pet. Mem. 41.) This argument is effectively a regurgitation of petitioner's claims regarding his counsel's performance; in other words, petitioner claims that Justice Ozzi erred factually by concluding that petitioner's trial counsel did not perform deficiently. The redundancy of this argument aside, the court will address petitioner's unreasonable determination of facts argument in turn.

As AEDPA's § 2254(e)(1) instructs, "a determination of a factual issue made by a state court shall be presumed to be correct," and the party alleging an unreasonable factual determination bears the burden of rebutting this presumption "by clear and convincing evidence." The Supreme Court has clarified this instruction, explaining that a state court's factual determination is not rendered unreasonable "merely because the federal habeas court would have reached a different conclusion

in the first instance." *Wood v. Allen*, 558 U.S. 290, 291
(2010). Further, if "'[r]easonable minds reviewing the record
might disagree' about the finding in question, 'on habeas review
that does not suffice to supersede the trial court's . . .
determination.'" *Brumfield*, 135 S. Ct. at 2277 (quoting
*Rice v. Collins*, 546 U. S. 333, 341-42 (2006)).

Reviewing the extensive record before it, the Richmond
County Supreme Court concluded that counsel's performance
reflected strategy with which petitioner disagrees in hindsight.
Petitioner in effect quibbles with Justice Ozzi's classification
of his trial counsel's acts as strategic decisions. (*See* Pet.
24 ("[T]he defendant's assertions that his attorney failed to
make various arguments at hearings and trial or pursue a
mistaken identity defense all reflect strategic decisions that
do not amount to ineffective assistance of counsel.").) In
support of his argument, petitioner advances largely the same
evidence he proffers for his ineffective-assistance claims.
This evidence, as discussed above, does not establish that
counsel was deficient. In view of the operative standard, the
evidence petitioner proffers is neither "clear and convincing,"
§2254(e)(1), nor does it give this court any reason to conclude
differently than did the Richmond County Supreme Court.
Accordingly, petitioner's allegation of an unreasonable factual

determination is without merit and amounts to a semantics dispute that this court rejects.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied and dismissed. The court declines to issue a Certificate of Appealability because petitioner has not shown that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Middleton v. Attorneys Gen. of States of N.Y., Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (internal quotation marks omitted); *see also* 28 U.S.C. § 2253(c) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). Additionally, the court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully requested to enter judgment denying and dismissing the petition, serve a copy of this Memorandum and Order and the judgment on petitioner, note service on the docket, and close the case.

**SO ORDERED.**

Dated:    November 18, 2019
            Brooklyn, New York

                                    /s/
                              **HON. KIYO A. MATSUMOTO**
                              United States District Judge